# EXHIBIT A

# AGREEMENT

# BETWEEN

# LOCAL 713, INTERNATIONAL BROTHERHOOD OF

# TRADE UNIONS

# AND

# BREADBERRY, INC.

## TABLE OF CONTENTS

Page

1. RECOGNITION OF UNION STATUS ..................................................... 1
2. UNION SECURITY ............................................................................... 1
3. MONTHLY CHECK-OFF ...................................................................... 2
4. HOURS OF WORK AND OVERTIME .................................................. 2
5. WAGES ................................................................................................ 3
6. PRIOR CONDITIONS .......................................................................... 4
7. DISCHARGES ...................................................................................... 4
8. LAYOFFS ............................................................................................. 5
9. VACATIONS ........................................................................................ 6
10. HOLIDAYS .......................................................................................... 7
11. SICKNESS BENEFITS ........................................................................ 7
12. DEATH IN THE FAMILY .................................................................... 7
13. JURY DUTY ......................................................................................... 8
14. LEAVE OF ABSENCE ......................................................................... 8
15. LATENESS AND ABSENTEEISM ...................................................... 8
16. DRUG & ALCOHOL TESTING ........................................................... 9
17. INDIVIDUAL AGREEMENTS ........................................................... 10
18. GRIEVANCE AND ARBITRATION ................................................... 10
19. RIGHT OF MANAGEMENT ............................................................... 13
20. VISITATION ....................................................................................... 14
21. UNION STEWARDS ........................................................................... 14
22. MEDICAL BENEFITS AND FUNDS ................................................... 15
23. NO DISCRIMINATION ...................................................................... 15
24. NO STRIKE/NO LOCKOUT ............................................................... 16
25. SAVINGS CLAUSE ............................................................................. 17
26. EXPIRATION DATE ........................................................................... 17
SCHEDULE A ............................................................................................ 25

THIS COLLECTIVE BARGAINING AGREEMENT ("Agreement") made this _____ day of _____, 2014 between LOCAL 713, INTERNATIONAL BROTHERHOOD OF TRADE UNIONS, hereinafter called the "Union" and BREADBERRY, INC., hereinafter collectively called the "Employer" where it is mutually agreed as follows:

1.    RECOGNITION OF UNION STATUS

A.    The Employer hereby recognizes the Union as the exclusive bargaining agent for all cashiers, baggers, delivery, aisle, produce, candy room, maintenance, and receiving personnel employed at 1689 60th Street Brooklyn, NY 11204 with respect to wages, hours or working conditions of employment.

2.    UNION SECURITY

A.    As a condition of employment, Employees of the Employer, covered by this Agreement shall, on or after the 60th day following the beginning of employment, the effective date of this Agreement, or the execution date of this Agreement, whichever is later, become members of the Union, but only to the extent that such membership requires that the Employee pay either (i) if a member, the Union's initiation fees and periodic dues uniformly required, or, (ii) if a non-member, service fees, which in the case of a regular service fee payers shall be equal to the Union's initiation fees and periodic dues, or in the case of an objecting service fee payer, shall be the proportion of the initiation fees and dues uniformly required, corresponding to the proportion of the Union's total expenditures that supports representational activities and costs.

B.    In the event an Employee covered by this Agreement is declared by the Union not to be in compliance with this Union Security provision, as required, the Union shall notify the Employer in writing of such fact, and the parties shall have ten (10) business days time

to adjust the matter. Should the matter not be adjusted within the allotted time, then the Employee in question shall be forthwith discharged from the employ of the Employer.

C.    The Union agrees that membership in the organization shall be and shall remain available to all unit Employees of the Employer on the same terms and conditions generally applicable to other Union members.

D.    The facility shop steward shall be notified by the Employer when a new unit Employee is hired.

E.    Employees shall be deemed for the first three (3) months of their employment to be probationary Employees. The aforementioned time periods may be extended for two (2) months upon request by the Employer, which the Union will not unreasonably withhold. After the probationary period, an Employee can only be dismissed or laid-off in accordance with this Agreement. Probationary Employees who are discharged shall not be subject to the grievance arbitration provisions of this Agreement.

F.    All subsequent hires by the Employer will be governed by the probationary periods set forth in paragraph 2(E).

3.    MONTHLY CHECK-OFF

A.    Upon individual written authorization, the Employer shall deduct and send to the Union on or before the tenth (10th) day of each month from the wages of each unit Employee the monthly union dues, initiation fees and assessments and shall make the necessary remittances on forms to be supplied by the Union.

4.    HOURS OF WORK AND OVERTIME

A.    Each Employee shall be entitled to one (1) full day of rest per week, which shall be twenty-four (24) consecutive hours.

660359-2                                                    2

B.    All work performed in excess of forty (40) hours per week shall be paid one and one-half times the straight hourly wage.

C.    Employees will be permitted to receive an unpaid break of no less than thirty (30) minutes and no more than one (1) hour between the hours of 11:30 a.m. to 3:00 p.m., as unilaterally selected by the Employer.

D.    It is understood Employees will have to work reasonable overtime of the Employer's discretion.

5.    WAGES

A.    Employees shall receive wage increases as identified in Schedule "A".

B.    New employees hired prior to June 15th, 2014 shall receive a Twenty-Five Cents (25¢) per hour wage increase upon ratification of the contract.

C.    In order to receive the anniversary date increase, an employee must be employed at least six (6) months prior to the anniversary date. In the event there is an increase in the federal or state minimum wage, an Employee who has successfully completed his probationary period shall receive an hourly wage increase of at least Twenty-Five Cents (25¢) above the minimum wage established by either the federal or any state government.

D.    Overtime shall not be permitted unless expressly approved by the Employer. Whenever hours worked are compensable at a greater rate of pay than an Employee's regular straight time rate of pay, the Employee shall be compensated of the higher rate of pay, but in now event shall the Employee be compensated at more than one (1) rate of pay.

E.    A "full-time" Employee is defined as an Employee who regularly works more than thirty-five (35) hours per week.

660359-2

3

F.    Paid "time-off" shall not be considered as "hours worked" in connection with calculating an Employee's overtime rate of pay.

G.    If an Employee receives or received an "increase in wages" because the Employer increased the Employee's job functions/responsibilities, nothing contained herein shall prevent the Employer, at a later date, from unilaterally removing the additional work from the Employee's job description and reducing the Employee's wages accordingly, and reducing the Employee's compensation to his base wages.

6.    PRIOR CONDITIONS

A.    All paid leave benefits (*e.g.*, vacation, sick leave, etc.) which prevail at the present time, or which shall prevail during the term of this Agreement or any extensions or modification thereof, which are more favorable than the provisions set forth herein, shall be deemed additional benefits. There shall be no deduction of base wages and paid leave benefits, which the Employees are now receiving or which they shall receive during the term of this Agreement or any extension or modifications thereof.

7.    DISCHARGES

A.    The Employer may discharge for just cause only. Notwithstanding the foregoing, probationary Employees may be discharged with or without cause, with or without notice, and without recourse to arbitration provision(s) contained herein. If the cause of the discharge of a non-probationary Employee is challenged by the Union, then the issue is to be submitted to arbitration in the manner hereinafter provided.

B.    It is understood the following are some, but not all of the reasons which may lead to an Employee's immediate discharge: theft of money, goods, or the Employer's merchandise or from another Employee during working hours; theft of time, use of narcotics,

660359-2                                      4

drunkenness, insubordination, possession of any type of weapon, assault upon the Employer or his representative or another Employee during working hours, calling an unauthorized strike or walkout, or proven recklessness resulting in a serious accident while on duty or excessive absences. It is understood nothing contained herein shall be interpreted as a bar to the Employer to terminating a unit Employee without resorting to progressive disciple and the Union grieving same in accordance with the Grievance and Arbitration provision set forth herein or should be considered a limitation on the Employer's "Management Rights".

8.    LAYOFFS

A.    The Employer shall have the right to lay off workers and shall give notice to the Union regarding same. Said notice shall contain a statement setting forth the reason for the contemplated lay-off. The provisions of this Section 8 shall not apply to any regular Employee or regular extra who has been hired for the purpose of replacing any Employees away on vacation, or absent due to illness or leave of absence, provided that the absent Employee gives the Employer twenty-four (24) hours notice of intention to return, then such replacement shall be given twenty-four (24) hours notice of layoff and, further provided, that all of the Employees in such replacement's job classification are back to work.

B.    All lay-offs and rehiring shall be on the basis of shop seniority applied to the job classifications. Seniority within any job classification shall be computed from the date of last original hire. In case of lay-off, a senior Employee shall have the right to "bump" a junior Employee having a lower classification, provided the senior Employee is qualified and able to perform the work of such junior Employee. In the event the senior Employee elects to "bump" such junior Employee, such senior Employee shall be paid the wages of the job classification

660359-2                                                            5

which he is assuming, and shall work the same hours and shift of the Employee whom he has "bumped."

C.   Laid-off Employees shall retain their seniority, for a period of six (6) months or a period equal to Employee's length of service, whichever is less, from day of lay-off. However, if a laid-off Employee does not report to work, or fails to notify the Employee of his inability to report for work due to a justified excuse, within five (5) days after the Employer sends by certified mail, return receipt requested, to the Union and to the Employee at his last known address, written notice of regular recall from the Employer, he shall lose his seniority.

D.   The shop steward shall enjoy preferred shop seniority with respect to lay-offs and the scheduling of vacation and days off.

E.   Employee's who are on lay-off (either for six (6) or twelve (12) months) do not accrue or retain any benefits, unless otherwise mandated by law.

9.   VACATIONS

A.   Subject to reopener on or around December 1st, 2014.

10.   HOLIDAYS

A.   All full-time Employee shall be entitled to the following holidays and shall be paid the same amount they would normally receive on that day if a holiday had not occurred and they had worked:  Rosh Hashanah (one day), Yom Kippur (one day), Passover (2 days – 1 first days, 1 second days), Shavuos (one day), Sukkos (2 days – 1 first days, 1 second days), Thanksgiving Day (one day).

B.   All Employees who may be called upon to work on any of the above named holidays shall be paid their regular rate of pay in addition to their regular day's pay.

660359-2                                                    6

C.    If an Employee has a day off at any time and that day should be on one of the holidays herein, the Employee shall be compensated with either an extra day's pay or a day off, as may be decided by the Employer.

D.    A probationary Employee employed during a period of time when there is an Employer recognized holiday will not receive pay for same during the Employee's probationary period.    The Employee will receive pay for the holiday upon the Employee's successful completion of the probationary period.

E.    Unit Employees who regularly work more than twenty-five (25) and less than thirty-five (35) hours per week shall receive holiday pay provided they are scheduled to work the day of holiday.    In no event will an Employee working between twenty-five (25) and thirty-five (35) hours per week receive more than three (3) paid holidays per year.    Employees who regularly work less than twenty-five (25) hours per week are not entitled to paid holidays.

11.    SICKNESS BENEFITS

A.    This collective bargaining agreement waives the NYC Paid Sick Leave law of 2014. Therefore, the employer shall not be bound by the law's provisions.

12.    DEATH IN THE FAMILY

A.    A full-time Employee with at least one (1) year of employment shall not be required to work for a maximum of three (3) days immediately following the death of his parent, sibling, spouse or child and shall be paid his regular straight-time wages for any of such three (3) days on which he was regularly scheduled to work.    Employees shall receive two (2) paid days off for the death of a grandparent and one (1) day off with pay for the death of a mother-in-law or father-in-law.

13.    JURY DUTY

A.    All full-time Employees who are called for Jury Duty and who serve shall be paid the difference between Jury Duty pay and their regular earnings for such time as they serve as jurors. Employees who receive notice to serve on Jury must notify his Employer immediately when such notice is received. This benefit will last a maximum of five (5) days and may be taken once (1) every five (5) years.

B.    No Employee shall receive pay for any part of jury service that occurs during previously scheduled regular time off or when the Employee is absent from work for other reasons.

14.    LEAVE OF ABSENCE

A.    Supplementing rights that may – or may not – be available under the Family Medical Leave Act (FMLA), any Employees becoming ill shall be entitled to a leave of absence for a personal illness for up to three (3) months during any twelve (12) month period, and said Employee shall be entitled to reinstatement upon application to his former position without loss of seniority. The Employer has the right to ask for medical documentation in connection with an Employee's request for a medical related leave of absence.

B.    Employees who are on leave of absence for medical, disability or worker's compensation shall retain their seniority rights for twelve (12) months.

C.    Unless otherwise required by law, contributions and payments for health coverage shall not be provided by the Employer during an Employee's leave of absence.

15.    LATENESS AND ABSENTEEISM

660359-2

8

A.   If an Employee is late four (4) times in a calendar year, he will get a written warning.  If that Employee is late one (1) more time in the same calendar year, he may, at the discretion of the Employer, be suspended for at least one full day.  If that Employee is late one (1) more time in the same calendar year, he may be discharged at the sole discretion of the Employer.  The Union will be notified in writing after the Employee has incurred his fourth lateness in a calendar year.

B.   If an Employee is absent five (5) days in a calendar year, not counting sick days he is entitled to, he will get a written warning.  If that Employee is absent one (1) more day in the same calendar year, he may, at the discretion of the Employer, be suspended for at least one full day.  If that Employee is absent one (1) further day in the same calendar year, he may be discharged, at the sole discretion of the Employer.

C.   Nothing contained herein shall be interpreted as a limitation of any of an Employee's rights under any federal or state disability law or any Family and Medical Leave law (should said law be applicable to the Employer).

16.   DRUG & ALCOHOL TESTING

A.   If it is determined by a certified testing laboratory that any Employee has reported to work or has been at work "under the influence" of alcohol three (3) or more times within a three (3) year period it is hereby agreed between the Employer and the Union that said Employee has engaged in a willful or substantial violation of the obligation(s) of his employment and may be discharged for cause.  It is further agreed that the only defense to said discharge that the Union may raise in an arbitration proceeding is a defense related to the "chain of custody." Nothing in this Article shall be interpreted as limiting the Employer's "management rights" in any manner or limiting management from taking any immediate disciplinary action, as it sees fit,

660359-2                                    9

subject to the other provisions of the Collective Bargaining Agreement. "Under the influence" shall be defined and interpreted in a liberal fashion. It is also understood Employees are not permitted to either report to work under the influence of alcohol or drink any alcohol beverages during the work day.

        B.     If it is determined by a certified testing laboratory that any Employee has reported to work or has been at work under the influence of an unlawful controlled substance it is hereby agreed between Employer and the Union that said Employee has engaged in a willful or substantial violation of the obligation(s) of his employment and may be discharged for cause. It is further agreed that the only defense to said discharge that the Union may raise in an arbitration proceeding is a defense related to the "chain of custody." Nothing in this Article shall be interpreted as limiting the Employer's "management rights" in any manner or limiting management from taking any immediate disciplinary action, as it sees fit, subject to the other provisions of the Collective Bargaining Agreement.

        C.     A refusal to take a "drug" or "alcohol" test will be determined and interpreted as if the Employee had taken and failed same.

17.    INDIVIDUAL AGREEMENTS

        A.     The Employer shall not enter into any individual contract or verbal agreement with any of its Employees, and no agreement, understanding, alteration or variation of the terms and conditions hereof shall bind the Employer or the Union, unless made and executed in writing by the Employer and the Union, and that this Agreement shall supersede any and all prior agreements between the Employer and any of the Employees, except as to any prior better conditions that existed or prevailed prior to this Agreement.

18.    GRIEVANCE AND ARBITRATION

660359-2                                       10

A.  All grievances concerning discipline and discharge between the parties hereto (the Employer and the Union), growing out of the interpretation or application of any clause of the Agreement, or any breach or threatened breach of the Agreement, shall be settled in the following manner:

1.    Any said dispute or grievance shall be presented to the Employer in writing within twenty-one (21) calendar days of its occurrence. The Employer will notify the Union of all discharges within seven (7) calendar days of said discharge. This seven (7) calendar day period shall be inclusive of the twenty-one (21) calendar days' period described within this Article.

2.    If the matter is not adjudicated or resolved at Step 1 within five (5) calendar days after being presented, then within fifteen (15) calendar days after failure to adjust at Step 1, either party may submit the matter to arbitration. The Arbitrator shall be designated for this purpose by agreement between the parties, or if such agreement cannot be reached, the Arbitrator shall be designated from a panel request by either party to the American Arbitration Association pursuant to its labor rules then obtaining.

3.    Grievances concerning wage rates paid to an Employee may be filed during the term of the Collective Bargaining Agreement. Grievances concerning the scope and extent of the management's rights clause shall fall under this Article. However, said grievance may not seek any damages prior to the beginning of the Collective Bargaining Agreement in which the instant grievance was filed. All other time limitations contained in Article A shall remain the same and apply to all grievances, regardless of their nature.

B.  The failure of either party to submit an arbitratable dispute to arbitration within the time limit proscribed within this Article shall be conclusively deemed to be a waiver

660359-2                                          11

of its rights thereto, and of the claim upon which it is based. All timing and/or filing obligations as set forth in this Article or instant Agreement are conditions precedent to participate in the arbitration process and procedures as set forth herein. A Judge may determine if either the Employer and/or the Union have satisfied the condition precedents set forth herein.

C. No individual Employee may initiate an arbitration/proceeding, it being agreed and understood that the Employer and the Union are the only parties at interest herein.

D. If the Arbitrator finds that an Employee has been unjustly discharged, he shall be reinstated to his former position without loss of seniority or rank and without reduction of salary. The Arbitrator may award, as a remedy, reinstatement of the Employee without back-pay.

E. If either party defaults in appearing before the Arbitrator, after having been given due written notice, the Arbitrator may render an award upon the testimony of the party appearing.

F. Arbitration expenses shall be borne equally by the parties.

G. Discharge arbitrations shall take precedence over all other arbitrations. The parties shall cooperate to proceed without delay to complete the hearing on discharge cases.

H. The procedure herein outlined in respect to matters over which the Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues. The Arbitrator shall have the power to award appropriate remedies. The award of the Arbitrator is final and binding upon the parties and the Employee or Employees involved, provided, however, that nothing herein shall be construed to forbid either party from resorting to court for relief from or enforcement of the arbitration award.

I.    In a proceeding to confirm an arbitration award, the party moving to confirm the award may serve the other party by registered or certified mail.

J.    All arbitrations shall be submitted to a panel Arbitrator to be designated by the American Arbitration Association  or any successor entity.  The Arbitrator shall have no power to vary from, alter, modify, amend or in any way change the agreement in arriving at a decision.  The decision of the Arbitrator shall be final and binding upon the parties.

K.    This clause has been freely bargained over by the Employer and the Union.

19.    RIGHT OF MANAGEMENT

A.    The employer retains the exclusive right to manage the business, to direct, control and schedule its operations and work force and to make any and all decisions affecting the business, whether or not specifically mentioned herein and whether or not heretofore exercised.  Such prerogatives shall include, but are not be limited to, the sole and exclusive rights to:  demote, suspend, discharge and discipline Employees, with just cause, and hire, promote, lay off, assign, transfer, select and determine the number of its Employees, including the number assigned to any particular work; to increase or decrease that number; direct and schedule the work force; combine positions, determine the location and type of operation; determine, assign, reduce and/or schedule when overtime shall be worked; install or remove equipment; discontinue the operation of the business by sale or otherwise, in whole or in part at any time; determine the methods, procedures, materials and operations to be utilized or to discontinue their performance by Employees of the Employer; transfer or relocate any or all of the operations by sale or otherwise, in whole or in part, at any time; determine the work duties of Employees; subject to past practice, promulgate, post and enforce rules and regulations governing the conduct and acts of Employees during working hours; require that assigned duties other than those normally

assigned be performed; select supervisory Employees; train Employees; conduct drug and alcohol testing, discontinue or recognize or combine any department or branch of operation with any consequent reduction or other change in the work force; introduce new or improved methods or facilities, regardless of whether or not the same cause a reduction in the working force; determine job qualifications, work pace, work performance levels, standards of performance, and methods of evaluation of the Employees and in all respects carry out, in addition, the ordinary and customary functions of management, introducing any and all policies and procedures to effectuate any federal, state, or municipal statute, including, but not limited to the Federal Family and Medical Leave Act, all without hindrance or interference by the Union provided the aforementioned rights do not conflict with the terms of the *Collective Bargaining Agreement* and this Agreement.

20.    VISITATION

A.    An official representative of the Union shall be permitted reasonable time to visit the Employer's premises during working hours.  Each representative shall first report to the office of the Employer and he shall not interfere with the work of any Employee and shall, at all times, comply with shop rules.

21.    UNION STEWARDS

A.    The Union shall designate not more than one (1) Employee as chief shop steward for the Employer.  The chief shop steward shall have top seniority in the shop of the Employer for layoff purposes, provided, however, that he is able to perform the functions of the position for which he seeks to claim his seniority.  The shop steward must be an active Employee of the Employer.

B.     The shop steward shall suffer no loss of pay for time spent by him during regular working hours in the handling of grievance procedures.

22.    MEDICAL BENEFITS AND FUNDS

A.     Medical benefits will be the subject of a reopener on or around December 1st, 2014.

23.    NO DISCRIMINATION

A.     There shall be no discrimination in the interviewing or hiring of applicants for employment or against Employees once hired because of color, race, sex, age, creed, religious belief, or union membership.  The instant Collective Bargaining Agreement incorporates the following anti-discrimination statues into the Collective Bargaining Agreement and the Collective Bargaining Agreement's arbitration clause:  These anti-discrimination statutes and/or provisions include, but are not limited to, the following:  Title VII of the Civil Rights Act of 1964 as amended, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967 as amended, the Americans with Disabilities Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the New York State Human Rights Law, the New York State Labor Law, and any other statute, regulation and/or ordinance, federal, state or municipal, relating to the Employee's employment or termination of the Employees' employment.

B.     Nothing in this Agreement shall prevent the Employer from taking any action it deems necessary as to comply with the Americans with Disabilities Act or any similarly related federal, state or municipal statute, rule or ordinance.  It is agreed any reasonable

660359-2                                    15

accommodation made by the Employer is made on a non-precedent, no-referral basis and any negotiation by the Employer and Employee during the "interactive process" shall not be considered individual negotiations between the Employer and the unit Employee, as prohibited by this Agreement.

C.    Compliance with this provision is a contractual commitment of all parties pursuant to the instant Collective Bargaining Agreement.

D.    This clause has been freely bargained over by the Employer and the Union.

24.    NO STRIKE/NO LOCKOUT

A.    During the term of this Agreement, the Union shall not call or authorize any strike against the Employer at the establishment covered by this Agreement and the Employer shall not effect any lockouts.  Should an Employee or Employees engage in any strike, and should the Employer notify the Union of such action, a Representative of the Union shall, as promptly as possible, instruct such Employees to forthwith cease such action and promptly return to their respective jobs and comply with the applicable provisions of this Agreement.

B.    The Union shall not sanction, approve or honor any picket line established by another labor organization at the Employer's premises, or any other location where the Employer is doing business.  No Employee shall honor such a picket line and any Employee who refuses to cross such a picket line shall be discharged.  The Union shall be liable to the Employer for any damages caused to the Employer due to a Union's breach of this provision.

C.    The Employer agrees that in consideration of performance by the Union as set forth above, with respect to any strike which is contrary to the provision of this Article, there shall be no liability for damages on the part of the Union, its officers, agents or members for

breach of contract, by suit or otherwise. A member's failure to adhere to the Union's directive can result in disciplinary action to the member, up to and including immediate discharge.

25. SAVINGS CLAUSE

A. If any of the provisions of this Agreement shall be declared or held to be a violation of any law, those provisions shall be eliminated from the Agreement. The Agreement shall remain in effect minus the deleted provisions.

26. EXPIRATION DATE

A. This Agreement shall become effective as of _____, 2014 and shall remain in full force and effect until midnight, December 31, 2017, and unless written notice of a desire for change therein or to terminate the same be given by either party, via Certified Mail, return receipt and/or facsimile transmission, at least sixty (60) days and not any more than ninety (90) days prior to the termination date hereof of desire to terminate the Agreement, this Agreement shall be automatically renewed and shall remain in full force and effect on a year to year basis thereafter.

IN WITNESS WHEREOF, the parties have hereto set their hands and seals the day above written.

Local 713, International Brotherhood of Trade Unions, I.U.J.A.T.

By: _____

_____
Firm Name

_____
By

_____
Title

_____

_____
Business Address

_____
Business Telephone

## SCHEDULE A

Agreed Upon Weekly or Hourly Wage Increase[1]

| Job Classification | 1/1/15 | 1/1/16 | 1/1/17 |
|---|---|---|---|
| All unit employees | 25¢ | 25¢ | 25¢ |

_____
BREADBERRY, INC.

Dated 8/18/14

_____
Local 713, International Brotherhood of Trade Unions, ~~I.U.P.~~A.T.

Dated 8/19/14

_____

[1] All wages rates left blank will be determined through negotiations between the Employer and the Union, when an Employee in such unit classification is a) covered by this Agreement; and b) employed by the Employer.

660359-2

19