

EXHIBIT B

THIS AGREEMENT made and entered into as of this 1st day of January 2018, by and

between Local 713 I.B.O.T.U., U.M.D., I.L.A., AFL-CIO located at 400 Garden City

Plaza, Garden City, NY 11530, hereinafter referred to as the "Union", and

BREADBERRY, INC. hereinafter referred to as the "Employer".


## WITNESSETH:

NOW THEREFORE, it is mutually agreed as follows:

## ARTICLE I - RECOGNITION

The Employer recognizes and acknowledges the Union as the sole and exclusive collective bargaining agency for all of its full-time and regular part-time employees, with respect to wages, hours and conditions of employment, excluding executives, office clericals, supervisors and guards as defined in the Labor Management Relations Act as amended, and agrees to deal collectively only with this Union for and on behalf of such employees.

## ARTICLE II - UNION SECURITY

Section 1.    All employees covered by this Agreement, who are members of the Union, shall maintain membership in good standing in the Union as a condition of continued employment.

Section 2.    All employees covered by this Agreement, who are not members of the Union, shall be come members of the Union in good standing on the sixty-first (61st) day from: (a) the date they first commenced work, (b) the date of execution of this Agreement or (c) the effective date of this Agreement, whichever is later.

Section 3.    For purposes of this Article, an employee shall be considered in good standing if he remits to the Union periodic dues and initiation fees uniformly required by the Union as a condition of membership, or his dues and initiation fee are checked off by the Employer pursuant to the *"Checkoff"* provision of this Agreement. The Union shall supply the Employer with dues check-off authorization forms and the Employer shall provide all current and future employees with said forms and request employees to sign said forms as allowed by applicable law.

Section 4.    An employee who has failed to acquire or maintain membership in the Union in good standing shall be discharged within fourteen (14) calendar

days following receipt of a written demand from the Union to the Employer requesting his discharge.

Section 5.　　New employees shall be deemed temporary and employed on a probationary basis for a period of One Hundred Eighty (180 ) days. Thereafter, they shall be deemed regular employees. A Full-time Employee shall be defined as any Employee who regularly works Thirty-five (35) or more hours per week.

Section 6.　　The Employer shall be required to begin monthly dues remittance for all employees who have completed sixty (60) days of employment by the last day of any month for which it is due.

## ARTICLE III - CHECK-OFF

Upon individual written authorization, the Employer agrees that he will deduct from the wages of employees, once a month, out of the first salary payable in each month, the amount of dues, initiation fees and regularly authorized assessments the employees are required to pay the Union for the month.

All monies, so deducted, shall be remitted to the Union, together with a list of the employees whose dues and initiation fees have been deducted, by the last day of the current month.

## ARTICLE IV  -  HOURS OF WORK AND OVERTIME

Each Employee shall be entitled to one (1) full day of rest per week, which shall be twenty-four (24) consecutive hours.  Time and one-half shall be paid for all hours in excess of forty (40) hours in one week. Employees shall work a reasonable amount of overtime at the discretion of the Employer.  Employees will be permitted to receive an unpaid break of no less than thirty (30) minutes and no more than one (1) hour between the hours of 11:30 a.m. and 3:00 p.m., as determined solely by the Employer.  Overtime shall not be pyramided; that is all hours worked for which premium time is required to be paid under this agreement shall be excluded from the computation of hours worked for the purposes of determining whether overtime was worked during that week or the amount thereof.

## ARTICLE V – NO PYRAMIDING

All vacation, holiday, sick day and bereavement pay unless otherwise provided for in this agreement shall be paid at the employees regular straight time rate of pay.  There shall be no pyramiding.  Whenever hours worked are compensable at greater than the employee's regular straight time rate under more than one provision of this Agreement, the hours shall be compensated for at the higher rate, but in no event shall they be compensated for at more than one rate.

## ARTICLE VI – WAGES

Section 1.    All employees shall receive increases as follows:

| **EFFECTIVE DATE** | **WAGE INCREASE** |
| --- | --- |
| January 1, 2018 | All Employees shall receive an increase in compensation enumerated in Article VII . |
| January 1, 2019 | Employees who receive an increase in wage due to the increase in minimum wage on December 31, 2018, shall receive the increase in compensation enumerated in Article VII.<br><br>Employees who do not receive an increase in wage due to the increase in minimum wage on December 31, 2018 shall receive the shall receive a Twenty-five Cent (25¢) per hour increase on January 1, 2019 in addition to increase in compensation enumerated in Article VII. |
| January 1, 2020 | All Employees shall receive a Twenty-five Cent (25¢) per hour increase in addition to increase in compensation enumerated in Article VII. |

Employees shall only receive a maximum of one raise per twelve (12) month period, not to exceed Twenty Five Cents (25¢).

Section 2.    It is agreed that the Employer may require an employee of one classification to do work which may fall within the duties of another classification, should the second classification be a higher one, the employee shall receive the rate therefore, and unless temporarily assigned in said classification after completion of two (2) weeks service in the higher classification.  If the parties cannot agree thereon, the matter shall be arbitrated as hereinafter provided.  The employee in the meantime shall perform the work assigned to him.

Section 3.    New employees after One Hundred Eighty (180) days shall receive the cleaning allowance enumerated in Article VII herein.  In order to receive an anniversary date increase, an employee must be employed at least six (6) months prior to the anniversary date.

## ARTICLE VII – CLEANING ALLOWANCE

The Employer agrees that all employees employed for One Hundred Eighty (180) days shall receive a cleaning allowance of $30.00 per month, to be paid during the first pay period of the month.  The Employer also agrees to furnish tools and equipment required for any work to be performed.

## ARTICLE VIII – PRIOR CONDITIONS

Nothing in any provisions of this agreement shall be so construed, anything to the contrary notwithstanding, as to affect a reduction in the entitled wage rate or benefits (*e.g.* vacation, holiday pay, etc.) of any worker, any entitled conditions and/or benefits formerly or presently received prior to the execution of this CBA or to increase the number of hours per week which the worker shall be compelled to work in order to earn his present weekly wage.

## ARTICLE IX - DISCHARGE/SUSPENSION

Section 1.    The Company shall not discharge nor suspend any employee without just cause, and the written notice of discharge or suspension must set forth the specific reason (s) for such action.

Section 2.    Prior to suspension or discharge, the Employer shall give at least two (2) warning notices of the specific complaint against the affected employee in writing and copies to the Union and Shop Steward, except that no warning notice need be given any employee before he is discharged or suspended for any of the causes listed under Causes for Immediate Discharge.

Section 3.    Causes for Immediate Discharge:  The causes for immediate discharge of an employee shall be for the theft of money, goods, or merchandise of the Employer or another employee during working hours, theft of time, use of narcotics, drunkenness, insubordination, possession of any type of weapon, assault on Employer or his representative or another employee during working hours, calling an unauthorized strike or walkout, or proven reck-lessness resulting in a serious accident while on duty.

Section 4.    Except for the discharge of an employee for a reason set forth in Section 3 of this Article, or where in the Union's sole judgment it is in the best interest of those concerned that the cause for discharge be submitted to arbitration and the employee shall not be continued in employment pending the arbitration award.

## ARTICLE X - LAY-OFF & SENIORITY

Lay-off shall be on the basis of seniority within job classifications.  The Employer shall send to the Union a list of names of the employees laid-off promptly after the lay-off takes place.

A.    Whenever a reduction in the work force is necessary, the Employer shall give two (2) days' notice of such lay-off to the regular and temporary employees, excluding the week-end, and said notice may be given no later than the end of the work day on Wednesday.

B.    The Employer will prepare and submit to the Union a seniority list based

upon the length of service record for the employees. Seniority shall prevail, and the principle thereof shall be applied to lay-offs, rehiring and wherever else applicable.

C.     Any employee who has, or may quit or has been or may be discharged for cause, shall lose all previously accumulated seniority.

## ARTICLE XII - VACATION

Section 1.     The Employer shall grant all of its current employees, during each contract year, paid vacation as follows:

| LENGTH OF EMPLOYMENT | LENGTH OF VACATION |
|---|---|
| 12 months | 1 week |
| 36 months | 2 weeks |
| 96 months | 3 weeks |

Section 2.     The Employer shall grant to all Employees hired after January 1, 2018, during each contract year, paid vacation as follows:

| LENGTH OF EMPLOYMENT | LENGTH OF VACATION |
|---|---|
| 12 months | 1 week |
| 60 months | 2 weeks |

Section 3:     Vacation money shall be paid upon the employee's return from vacation.

Section 4.     Vacations shall be picked in the order of seniority.

Section 5.     Employees who have a leave of absence in employment for up to a maximum of six (6) months in any calendar year due to sick disability or workers compensation (an employee must be receiving benefits for sick disability or workers compensation) shall be credited as time worked for vacation purposes.

Section 6.     In the event of the death of any employee covered by this agreement, vacation monies due, on a pro-rata basis, shall be paid to the designated beneficiary.

Section 7.     Holidays falling during the vacation period shall be paid for, in addition to the employee's regular pay for the length of earned vacation.

Section 8.     There shall be no carryover or accrual of vacation days, nor will any employee be paid for unused vacation time.

## ARTICLE XIII - HOLIDAYS

All full-time employees shall be entitled to the following holidays and shall be paid their regular rate of pay for eight (8) hours:

Rosh Hashanah (1 day); Yom Kippur (1 day); Passover (2 days – 1 first days, 1 second days); Shavous (1 day); Sukkot (2 days – 1 first days, 1 second days), Thanksgiving Day.

Employees who work on any of the aforementioned holidays shall be paid their regular rate of pay for any hours actually worked in addition to the holiday pay enumerated above.

Should any of the aforementioned holidays fall within the probationary period referred to herein, the employees shall receive pay for such holiday after the probationary period has been completely worked.

## ARTICLE XIV – SICK LEAVE

This Agreement waives the New York City Paid Sick Leave Act. The parties hereby agree that the Employer is exempt from the act and therefore, is not bound by the law's provisions. In the event that the law is modified and no longer provides for exemptions, the vacation provided by the employer shall be modified to PTO.

## ARTICLE XV - DEATH IN FAMILY

Employees with at least one (1) year of employment who have a death in their family shall receive three (3) days leave of absence with pay immediately following the death of a parent, sibling, spouse or child; two (2) days leave of absence with pay immediately following the death of grandparent and one (1) day leave of absence with pay immediately following the death of a mother-in-law or father-in-law.

## ARTICLE XVI - JURY DUTY

Employees who are required to serve on a jury shall receive from the Employer, as wages, the difference between their basic weekly wage and that which the employee received from having served on jury duty.

## ARTICLE XVII – LEAVE OF ABSENCE

Supplementing rights that may, or may not be available under the Paid Family Medical Leave Act (PFMLA), any Employees becoming ill shall be entitled to leave of absence for a personal illness for up to three (3) months during any twelve (12) month period, and said employee shall be entitled to reinstatement upon application to his/her former position without loss of seniority or benefits. The Employer has the right to request medical documentation in connection with an Employee's request for a medical related leave of absence.

## ARTICLE XVIII - LATENESS AND ABSENTEEISM

If an employee is late four (4) times in a calendar year, he/she will get a written warning. If that employee is late one (1) more time in the same calendar year, he/she shall be suspended for at least one (1) full day. If that employee is late one (1) more time in the

same calendar year, he/she shall be discharged. The Union will be notified in writing after the Employee has incurred his fourth lateness in a calendar year.

If an employee is absent five (5) days in a calendar year, not counting the sick days he is entitled to, he/she will get a written warning. If that employee is absent one (1) more day in the same calendar year, he/she shall be suspended for at least one (1) full day. If that employee is absent one (1) further day in the same calendar year, he/she shall be discharged. This does not abridge an employee's rights – if any – under the federal Family and Medical Leave Act.

## ARTICLE XIX - DRUG & ALCOHOL TESTING

If it is determined by a certified testing laboratory that any employee has reported to work or has been at work "under the influence" of alcohol it is hereby agreed between the Employer and the Union that said Employee has engaged in a willful or substantial violation of the obligation(s) of his employment and may be discharged for cause. It is further agreed that said employee will be ineligible for severance of *any* kind and that the only defense to said discharge that the Union may raise in an arbitration proceeding is a defense related to the "chain of custody." Nothing in this paragraph shall be interpreted as limiting Employer's "management rights" in any manner or limiting management from taking any immediate disciplinary action, as it sees fit, subject to the other provisions of this *Agreement*. "Under the influence" shall be defined and interpreted in a liberal fashion, In other words it is understood Employees are not permitted to either report to work under the influence of alcohol or drink any alcohol beverages during the work day.

If it is determined by a certified testing laboratory that any Employee has reported to work or has been at work under the influence of an unlawful controlled substance it is hereby agreed between Employer and the Union that said Employee has engaged in a willful or substantial violation of the obligation(s) of his employment and may be discharged for cause. It is further agreed that said employee will be ineligible for severance of *any* kind and that the only defense to said discharge that the Union may raise in an arbitration proceeding is a defense related to the "chain of custody." Nothing in this paragraph shall be interpreted as limiting the Employer's "management rights" in any manner or limiting management from taking any immediate disciplinary action, as it sees fit, subject to the other provisions of this *Agreement*.

A refusal to take a "drug" or "alcohol" test will be determined and interpreted as if the Employee had taken and failed same.

## ARTICLE XX - INDIVIDUAL AGREEMENTS

The Employer shall not enter into any individual contract or verbal agreement with any of its employees, and no agreement, understanding, alteration or variation of the terms and conditions hereof shall bind the employer or the Union, unless made and executed in writing by the Employer and the Union, and that this *Agreement* shall supersede any and all prior agreements between the Employer and any of the employees, except as to any prior better conditions that existed or prevailed prior to this *Agreement*.

## ARTICLE XXI - GRIEVANCE AND ARBITRATION

All grievances concerning discipline and termination between the parties hereto (the Employer and the Union), growing out of the interpretation or application of any clause of the *Agreement*, or any breach or threatened breach of the Agreement, shall be settled in the following manner:

1. Any said dispute or grievance shall be presented to the Employer in writing within five (5) calendar days of its occurrence. The Employer is obligated to notify the Union of all discharges within five (5) calendar days of said discharge.

2. If the dispute or grievance is not adjudicated or resolved, either party may submit the matter to arbitration within twenty (20) days after the occurrence of the act giving rise to the arbitration. Contract arbitrators for this *Agreement* shall be Elliot Shriftman, Roger Maher, and Jay Nadelbach, to be selected in the order presented above, or in any order selected by the parties.

3. Grievances that occur on a repeated basis and/or concern an employee's compensation may be filed during the term of the *Collective Bargaining Agreement*. Grievances concerning the scope and extent of the management rights clause shall fall under this section. However, said grievance may not seek any damages prior to the beginning of the *Collective Bargaining Agreement* in which the instant grievance was filed. The payment of a bonus or any income not required by the instant *Collective Bargaining Agreement* shall not be considered to have occurred on a repeated basis. All other time limitations contained in paragraph A shall remain the same and apply to all grievances, regardless of their nature.

A. The failure of either party to submit an arbitratable dispute to arbitration within the time limit proscribed within this Article shall be conclusively deemed to be a waiver of its rights thereto, and of the claim upon which it is based. No individual employee may initiate an arbitration/proceeding, it being agreed and understood that the Employer and the Union are the only parties at interest herein.

B. If the Arbitrator finds that an employee has been unjustly discharged, he shall be reinstated to his former position without loss of seniority or rank and without reduction of salary. The Arbitrator may also award, as a remedy, reinstatement of the employee without back-pay.

C. If either party defaults in appearing before the Arbitrator, after having been given due written notice, the Arbitrator may render an award upon the testimony of the party appearing.

D. Arbitration expenses shall be borne equally by the parties.

E. Discharge arbitrations shall take precedence over all other arbitrations. The parties shall cooperate to proceed without delay to complete the hearing on discharge cases.

F. Any party may initiate an arbitration proceeding.

G. The procedure herein outlined in respect to matters over which the Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of

all such issues. The Arbitrator shall have the power to award appropriate remedies. The award of the Arbitrator is final and binding upon the parties and the employee or employees involved, provided, however, that nothing herein shall be construed to forbid either party from resorting to court for relief from or enforcement of the arbitration award.

H. In a proceeding to confirm an arbitration award, the party moving to confirm the award may serve the other party by registered or certified mail.

I. The Arbitrator shall have no power to vary from, alter, modify, amend or in any way change the *Collective Bargaining Agreement* in arriving at a decision. The decision of the Arbitrator shall be final and binding upon the parties.

J. It is expressly understood that an Employee's failure to report to work on time may and/or will eventually lead to the Employer imposing disciplinary action, up to and including discharge.

K. All timing and/or filing obligations as set forth in this section or instant *Agreement* are conditions precedent to participate in the arbitration process and procedures as set forth herein. A court of competent jurisdiction may determine if either party has satisfied the jurisdictional requirements set forth herein.

## ARTICLE XXII - RIGHTS OF MANAGEMENT

The Employer retains the exclusive right to manage the business, to direct, control and schedule its operations and work force and to make any and all decisions affecting the business, whether or not specifically mentioned herein and whether or not heretofore exercised. Such prerogatives shall include, but are not be limited to, the sole and exclusive rights to: demote, suspend, discharge and discipline employees, with just cause, and hire, promote, lay off, assign, transfer, select and determine the number of its employees, including the number assigned to any particular work; to increase or decrease that number; direct and schedule the work force; determine the location and type of operation; determine, assign, reduce and/or schedule when overtime shall be worked; install or remove equipment; discontinue the operation of the business by sale or otherwise, in whole or in part at any time; determine the methods, procedures, materials and operations to be utilized or to discontinue their performance by employees of the Employer; transfer or relocate any or all of the operations by sale or otherwise, in whole or in part, at any time; determine the work duties of employees; subject to past practice, promulgate, post and enforce rules and regulations governing the conduct and acts of employees during working hours; require that assigned duties other than those normally assigned be performed; select supervisory employees; train employees; conduct drug and alcohol testing, discontinue or recognize or combine any department or branch of operation with any consequent reduction or other change in the work force; introduce new or improved methods or facilities, regardless of whether or not the same cause a reduction in the working force; determine job qualifications, work pace, work performance levels, standards of performance, and methods of evaluation of the employees and in all respects carry out, in addition, the ordinary and customary functions of management, all without hindrance or interference by the Union provided the aforementioned rights do not conflict with the terms of this *Agreement*.

## ARTICLE XXIII - VISITATION

It is agreed by the Employer that the Union Representation shall have access to the employer's facility during working hours, to ascertain whether the agreement is being properly observed, providing there is a minimum interruption of the normal course of the operation in the facility.

## ARTICLE XIV - SHOP CHAIRMAN

The Union shall have the right to establish one (1) Shop Chairman in the facility covered by this Agreement. Such Chairman shall have the right to take up with a representative of the Employer all grievances arising out of this Agreement. Such Chairman must be in the facility at any time when employees are working.

## ARTICLE XV - CONTRACTING OF WORK

All work which can be done at the Employer's facility will be done there and not contracted out or performed at some other establishment. Any work which has heretofore been contracted out or purchased elsewhere may continue to be so contracted or purchased.

## ARTICLE XXI - NO DISCRIMINATION

Section 1.    Neither the Employer nor the Union will discriminate against or in favor of any employee or applicant for employment because of race, color; creed, national origin, citizenship status, sex, age, religious belief, gender identification, union membership, disability, marital status or other legally protected status.

Section 2.    Nothing in this Agreement shall prevent the Employer from taking any action necessary to comply with the Americans with Disabilities Act. Reasonable accommodations made by the Employer for a particular employee shall be a non-precedential nature and shall not be evidence of disparate treatment in any grievance or arbitration.

## ARTICLE XXII - NO STRIKE/NO LOCKOUT

Where an unauthorized work stoppage or strike occurs, the Union will make immediate efforts to get the employees to return to their respective jobs and shall request the employees to cease any action which may affect production. The Employer agrees, in consideration of the performance by the Union of the aforesaid undertakings, to absolve the Union, its officers, agents or members from liability by suit for damages for breach of contract of any kind or character whatsoever. It is distinctly agreed and understood that the Union shall not be held liable for any unauthorized or outlaw strikes, or the individual acts or actions of any employee or employees.

## ARTICLE XXIII - MODIFICATION OF AGREEMENT

Neither the Employer nor any employee has the right to modify or waive any of the provisions of this Agreement. The Employer will not enter into any individual agreements or arrangements with any of its employees covered by this agreement.

## ARTICLE XXIV – PAID FAMILY AND MEDICAL LEAVES

Employees shall be eligible for Paid Family Medical Leave as provided by current law.

## ARTICLE XXV - MILITARY LEAVE

All military leaves shall be as provided by the Military Act or other legislation governing same, except that in any event, employees shall be restored to their former positions at the prevailing rate of pay, on the basis of seniority, the time spent in military service considered as time actually employed by the Employer. Reinstatement, however, must be applied for within ninety (90) days after receiving an honorable discharge and the applicant must be physically able to do the work.

## ARTICLE XXVI - BULLETIN BOARDS

The Employer agrees to post and allow the Union the use of a sufficient number of bulletin boards in the shop to be used for Union notices.

## ARTICLE XXVII - SEPARABILITY AND SAVINGS CLAUSE

Should any part of this agreement or any portion therein contained be rendered or declared illegal, legally invalid or unenforceable by a court of competent jurisdiction, or by the decision of any authorized governmental agency, such invalidation of such part or portion of this agreement shall not invalidate the remaining portions thereof. In the event of such occurrence, the parties agree to meet immediately, and if possible, to negotiate substitute provisions for such parts or portions rendered or declared illegal or invalid. Should the parties be unable to agree on substitute provisions, the matter shall be referred to arbitration as herein able provided. The remaining parts and provisions of this agreement shall remain in full force and effect.

## ARTICLE XXVIII - EXAMINATION OF RECORDS

The Union shall have the right during reasonable business hours to examine the payroll and records of the Employer to determine the wages and hours worked of employees.

## ARTICLE XXIX - SUCCESSORS AND ASSIGNS

Section 1.     This agreement shall be binding upon the parties hereto, their successors, administrators, executors, and assigns and shall survive a change of name, of location or place of business or re-

organization. In the event the entire operation or any part thereof is sold, leased, transferred or taken over by the sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this agreement for the life thereof.

It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this agreement. The Employer shall give notice to the existence of this agreement to any purchaser, transferee, assignee or lessee of the operation of this agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than thirty (30) days prior to sale.

Section 2.     The Employer shall not have the right to assign this agreement or in any other manner to transfer the rights and obligations thereof to any other party, unless and until the purchaser, transferee, assignee or lessee shall first have assumed and accepted, in writing, all the terms and conditions of this agreement. Employees working under this agreement shall at all times be entitled, acting through the Union as their representative, to hold the Employer directly responsible for the full performance of all terms and conditions of this agreement.

## ARTICLE XXX - NEUTRALITY CLAUSE

The parties mutually recognize that national labor law guarantees employees the right to form or select any labor organization to act as their exclusive bargaining representative for the purpose of collective bargaining with their Employer, or to refrain from such activity.

The Employer will take an approach of strict neutrality with regard to unionization of the Employees and will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Employer to the selection by such Employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

The Union and its representatives will not coerce or threaten any Employee in an effort to obtain authorization cards.

Whenever during the term of this Agreement the Employer finds it necessary to hire new Employees for vacancies in job classifications covered by this Agreement at its facility, the Employer shall notify the Union to request applicants for such vacancies. When requesting applicants, the Employer, upon request, will state the qualification applicants are expected to possess. The Union may furnish applicants for the job vacancies specified by the Employer. The Union's selection of applicants for referral shall be on a non-discriminatory basis and shall not be based upon or in any way affected by membership in the Union or the Union's bylaws, rules, regulations, constitutional provision, or any other aspects or obligations of Union membership policies or requirements, or upon personal characteristics of an applicant where discrimination based upon such characteristics is prohibited by law. The Employer agrees that any interest

demonstrated by an applicant in joining the Union shall not constitute grounds for discriminatory or disparate treatment nor adversely impact the applicant's ability to be hired by the Employer. The Employer shall be the sole judge of an applicant's suitability, competence and qualification to perform the work of any job filled.

The Union may provide the Employer with written notice of its intent to organize Employees covered by this Agreement. If such notice is served, the Employer shall then provide access to its premises and to such Employees by the Union. The Union may engage in organizing efforts in the Employer locker rooms and public areas of the facility during Employees' non-working times (before work, after work, and during meals and breaks) and/or during other periods and locations as the parties may mutually agree upon.

Within ten (10) days following the Employer's receipt of written notice of intent to organize Employees pursuant to Paragraph 5, the Employer will furnish the Union with a complete list of such Employees, including both regular full-time and regular part-time Employees, showing their job classification and departments. Within two (2) weeks thereafter, the Employer will furnish a second list of such Employees to the Union, which includes the home addresses. Thereafter, on a monthly basis, the Employer will provide to the Union updated lists which include the Employees' full name, department, address and classification. Provided further that in either case no Employees' home address will be provided to the Union under this paragraph if such Employee has objected in writing, without Employer solicitation or advice, to giving such information to the Union.

The Union may request recognition, as the exclusive collective bargaining agent for the Employees set forth in the unit. An Arbitrator, or another person mutually agreed upon by the Employer and the Union, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of Employees. If that review establishes that a majority of Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Employer will recognize the Union as such representative of such Employees. The Employer will not file, or cause to be filed, a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided in this Agreement.

The Employees subject to the card check procedure established by this Agreement, those whose cards count for the purposes of determining the Union's majority status, shall consist of all regular full-time and regular part-time Employees in the classifications described.

If the Union is recognized as the sole exclusive collective bargaining representatives as provided in paragraph 7, negotiations for a collective bargaining agreement will be commenced immediately. The Employer agrees to bargain in good faith in an effort to reach an agreement with the Union.

## ARTICLE XXXI - ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

A. The parties agree a goal of this Agreement is to ensure compliance with all federal, state, and local wage hour law. Accordingly, to ensure the uniform administration and interpretation of this Agreement in connection with federal,

state, and local wage-hour, all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article. The statute of limitations to file a grievance concerning the Covered Statutes shall be consistent with the applicable statutory statute of limitations. All such claims if not resolved in the grievance procedure, including class grievances filed by the Union, or mediation as described below shall be submitted to final and binding arbitration before Roger Maher. The Arbitrator shall apply appropriate law and may, but shall not be required to, award all statutory remedies and penalties, including attorneys' fees, consistent with the FLSA and New York Labor Law in rendering decisions regarding disputes arising under this Article.

B.  Whenever the parties are unable to resolve a grievance alleging a violation of any of the Covered Statutes, before the matter is submitted to arbitration, the dispute shall be submitted to mandatory mediation. The parties hereby designate Roger Maher as Mediator for such disputes. Such mediation shall be requested no more than thirty (30) calendar days following exhaustion of the grievance procedure. Following submission of the dispute to mediation, the parties with the assistance of the Mediator shall establish such procedures as shall expeditiously advance the mediation process, including the scheduling of the exchange of relevant information, submission of position statements, and dates for mediation. In the absence of agreement, the Mediator shall determine such procedures. Once the matter has been submitted to mediation, the Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Mediator. The fees of the Mediator shall be shared equally by the Union and the Employer.

C.  No party may proceed to arbitration prior to completion of the mediation process as determined by the Mediator. In the event the Union seeks arbitration of a grievance subject to these procedures, the Union shall submit its demand for arbitration to the Employer and the Arbitrator within thirty (30) calendar days following the Mediator's declaration that mediation has concluded. The Employer shall be obligated to produce relevant documents as requested by the Union and any objections to production shall be ruled on by the Arbitrator. Prior to hearing, if noticed, the Union shall also be entitled to depositions of relevant witnesses. The fees of the arbitrator shall be shared equally by the Union and the Employer. The Employer shall upon notice be entitled to take the deposition of any Employee seeking relief in such arbitration or any other relevant witness.

D.  In the event an Employee has requested, in writing, that the Union process a grievance alleging a violation of the Covered Statutes and the Union declines to process a grievance regarding alleged violations of the Covered Statutes, through the grievance/mediation process or to arbitration following the conclusion of mediation, an Employee solely on behalf of herself, may submit her individual claim to mediation, or following the conclusion of mediation, to arbitration. Written notice of the Employee's submission of the dispute to mediation and/or arbitration must be provided to the Employer, the Union, and

the Mediator/Arbitrator within thirty (30) calendar days of written notice from the Union, as measured by postmark date, email date, facsimile date, or delivery/attempted delivery date (if such notice is served by overnight delivery service), that it has declined to process the dispute to mediation and/or arbitration. Such claims may be presented by and on behalf of the individual Employee only, with or without counsel. The Mediator/Arbitrator shall have no authority to consider class or collective claims or issue any remedy on a class basis. The fees and expenses of the Mediator/Arbitrator shall be shared equally by the employee and the Employer, unless the arbitrator finds a violation of any of the Covered Statutes, in which case the Mediator/Arbitrator may, but shall not be obligated to, direct the Employer to pay the fees and expenses of the Arbitrator.

E. The parties agree not to contest court confirmation of an arbitration award rendered under this Article. Nothing herein shall require the Union or the Employer to indemnify the other party with respect to any finding by an arbitrator and/or court of competent jurisdiction that the Employer has violated any of the Covered Statutes.

All payroll and time records exchanged by the parties (i.e. Union, Employer or individual Employee) in mediation shall be deemed admissible in arbitration. All other information exchanged in mediation shall be deemed offered as part of a settlement negotiation and, pursuant to the Federal and New York State Rules of Evidence, shall not be admissible in any subsequent proceeding.

## ARTICLE XXXII - EXPIRATION OF AGREEMENT

This agreement shall expire at 12:01 a.m. on the 31st day of December, 2020. It shall be automatically renewed from year to year thereafter, unless modified or terminated by either party giving to the other party not less than sixty (60) days written notice, by registered mail, prior to the next termination date, of its desire to modify or terminate this agreement. Should said sixty (60) days' notice be given, joint conferences between the parties shall commence at least thirty (30) days before the termination date, for negotiation purposes.

## ARTICLE XXXIII - TERM OF AGREEMENT

This agreement shall be a Three (3) year agreement and shall go into force and effect on January 1, 2018. Should there be any ambiguity with respect to the interpretation of this Agreement, no inference will be drawn against the drafter of the letter Agreement in connection with said dispute. This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one (1) and the same instrument. Said facsimile transmission(s) and copy(ies) will have the full force and effect as an original executed Agreement.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be

executed by duly authorized officers and have hereunto set their hands and

seals the day and year first above written.

BREADBERRY, INC.

BY: _____

LOCAL 713 I.B.O.T.U., U.M.D.,
I.L.A., AFL-CIO

BY: _____